IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LESSIE B., )
)
         Plaintiff, )
)
v. ) 1:23CV1020
)
LELAND DUDEK, )
Acting Commissioner of Social Security, )
)
         Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Lessie B. ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.    PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on October 7, 2020, alleging a disability onset date of December 15, 2019. (Tr. at 18, 188-93)[1] Her application was denied initially (Tr. at 78-86) and upon reconsideration (Tr. at 87-99, 106-15). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 116-17.) On May 12, 2022, Plaintiff, along with her attorney, attended the subsequent

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #4].

telephone hearing, at which Plaintiff and an impartial Vocational Expert testified. (Tr. at 18, 39-77.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 31-32), and, on October 3, 2023, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff engaged in "substantial gainful activity" between December 2019 and December 2020. (Tr. at 21.) Although Plaintiff also engaged in some work activity in 2021 and 2022, her earnings during that time fell below the level of substantial gainful activity for those years. The ALJ concluded that "there has been a continuous 12-month period(s) during which [Plaintiff] did not engage in substantial gainful activity," and that Plaintiff therefore met her burden at step one of the sequential evaluation process. (Tr. at 21.)

At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> lumbar degenerative disc disease; degenerative joint disease/osteoarthritis of the bilateral shoulders; bilateral knee osteoarthritis; and morbid obesity[.]

(Tr. at 21.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 25-26.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work with the following further limitations:

5

> [S]he can stand and/or walk for four hours out of an eight hour day. She can occasionally climb, balance, stoop, kneel, crouch, and crawl; occasionally perform overhead reaching; and should avoid all exposure to extremes of heat and have no more than occasional exposure to concentrated atmospheric conditions.

(Tr. at 26.) At step four of the analysis, the ALJ determined that Plaintiff's past relevant work did not exceed her RFC. Specifically, the ALJ found that Plaintiff remained capable of performing her past relevant work as a driver as actually performed and her past relevant work as an office helper as actually and generally performed. (Tr. at 31.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 31.)

Plaintiff now challenges the ALJ's reliance on the Vocational Expert's testimony at step four of the sequential analysis. Specifically, the Plaintiff contends that the Vocational Expert's testimony conflicted with the <u>Dictionary of Occupational Titles</u> ("DOT"), but that the ALJ failed to obtain a reasonable explanation for the conflict as required by SSR 00-4p: <u>Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions</u>, 2000 WL 1898704 (Dec. 4, 2000).[4] In

---

[4] SSR 00-4p provides that:
> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
> If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.
> ….
> When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

Notably, SSR 00-4p was recently rescinded by SSR 24-3p: <u>Titles II and XVI: Use of Occupational Information and Vocational Specialist and Vocational Expert Evidence in Disability Determinations and Decisions</u>. The new guidance explains that "the DOT is not the only reliable source of occupational information" and that "requiring our adjudicators, VSs, and VEs to identify and explain conflicts with the

Pearson v. Colvin, 810 F.3d 204 (4th Cir. 2015), the Fourth Circuit clarified the steps an ALJ must take to identify and resolve apparent conflicts between a vocational expert's testimony and the job descriptions provided in the DOT under SSR 00-4p. Specifically, the Fourth Circuit held that, if an expert's testimony apparently conflicts with the DOT, the expert's testimony can only provide substantial evidence to support the ALJ's decision if the ALJ received an explanation from the expert explaining the conflict and determined that the explanation was reasonable and that it provided a basis for relying on the expert's testimony rather than the DOT. Pearson, 810 F.3d at 209-10; see also Thomas v. Berryhill, 916 F.3d 307 (4th Cir. 2019).

In the instant case, Plaintiff contends that the vocational testimony on which the ALJ relied at step four of the sequential analysis conflicted with the DOT as to both of the identified jobs. As noted above, the ALJ found, based on the Vocational Expert's testimony, that Plaintiff could perform two of her prior jobs. The Vocational Expert identified these jobs as Driver (DOT 913.663-018, 1991 WL 687828) and Office Helper (DOT 239.567-010, 1991 WL 672232) and further testified that, given the RFC in this case, Plaintiff could perform the job of Driver as actually performed[5] and the job of Office Helper as both actually and generally performed. (Tr. at 31, 71-75.)

---

DOT is time consuming . . . [and] led to unnecessary remands to resolve apparent conflicts that were not identified at the hearing when the VE testified. . . . We are rescinding SSR 00-4p and will no longer require our adjudicators to identify and resolve conflicts between occupational information provided by VSs and VEs and information in the DOT." SSR 24-3p. The Court will nevertheless consider the claims raised under SSR 00-4p, since it was in effect at the time of the decision in this case. SSR 24-3p n.1 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

[5] According to hearing testimony, Plaintiff performed the job of van driver at the light, rather than the medium level, because her duties as performed did not involve loading or unloading luggage. (Tr. at 56, 72.)

7

The job of Office Helper, as defined by the DOT, requires <u>frequent reaching</u>, with "frequent" further defined as occurring "from 1/3 to 2/3 of the time," and with "reaching" further defined as "[e]xtending hand(s) and arm(s) in any direction." DOT 239.567-010, 1991 WL 672232. The position of driver requires <u>constant reaching</u>, defined as occurring "2/3 or more of the time." DOT 913.663-018, 1991 WL 687828. However, Plaintiff's RFC and the hypothetical question based upon it included a restriction to only <u>occasional</u> *overhead* reaching. (Tr. at 26.)

The Fourth Circuit's decision in <u>Pearson</u> similarly involved a limitation to only occasional overhead reaching. There, "[t]he ALJ found [that the claimant's] non-dominant arm could only occasionally reach upward," but for all three of the jobs cited by the VE, "the [DOT] list[ed] <u>frequent</u> reaching as a requirement." <u>Pearson</u>, 810 F.3d at 210. The Fourth Circuit explained that, "[a]lthough the [DOT] does not expressly state that the occupations identified by the [VE] require frequent bilateral overhead reaching, the [DOT's] broad definition of 'reaching' means that they certainly <u>may</u> require such reaching." <u>Id.</u> at 211.[6] Because the ALJ failed to question the VE further to obtain a basis for relying on his testimony regarding the claimant's ability to reach overhead, the Fourth Circuit concluded the ALJ failed to identify or resolve the apparent conflict, and remand was required. <u>Id.</u> at 211-12.

In contrast, the ALJ and Vocational Expert in the present case engaged in the following exchange during the hearing:

---

[6] As noted in <u>Pearson</u>, "[t]he [<u>DOT</u>] defines reaching as '[e]xtending hand(s) and arm(s) in any direction.'" <u>Pearson</u>, 810 F.3d at 210 (quoting <u>Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles</u>, App'x C ("Physical Demands"), § 8 (U.S. Dep't of Labor 1993)).

> Q    [I]f I were to add to the hypothetical that the individual can only do occasional overhead reaching, would that change your response to the ability to do past work?
>
> A    ... I wouldn't change any of the—any of my previous testimony.
>
> Q    All right. And overhead reaching is not covered by the DOT, since the DOT doesn't separate overhead from other directions. How did you determine that the individual could perform the office helper as actually [and] generally performed . . . and the driver as actually performed with only occasional overhead reaching?
>
> A    Your Honor, I based that on my education, training[,] and experience in job placement and job evaluation—job analysis.

(Tr. at 73-74.)

Immediately following this discussion, the ALJ asked Plaintiff's counsel if he had any additional questions for the Vocational Expert. (Tr. at 74.) Counsel did not question the Vocational Expert further about overhead reaching, but instead asked about the impact of other potential limitations, including absenteeism and reduced standing and handling. (Tr. at 74.) The ALJ then asked the Vocational Expert a second time whether his testimony was consistent with the DOT, and the Vocational Expert again responded that it was, and that where the DOT was silent, he based his testimony on his "education, training, [and] experience in job placement and job analysis." (Tr. at 75.)

In the administrative decision, the ALJ explained that she based her findings at step four of the sequential analysis on the Vocational Expert's testimony that, given Plaintiff's RFC, age, vocational profile, and educational level, Plaintiff remained capable of performing her past relevant work as an Office Helper as actually and generally performed and a Driver as actually performed. (Tr. at 31.) In making this finding, the ALJ also noted that the Vocational

Expert "is a certified rehabilitation counselor with a decade of experience and [that] his testimony is accepted in accordance with [Social Security Ruling] 00-4p." (Tr. at 31.)

Although Plaintiff now contends that the ALJ "blindly relied" on the Vocational Expert's testimony at step four, neither SSR 00-4p nor the relevant case law require the minute scrutiny and elaborate explanations Plaintiff suggests. See, e.g., Allen v. Berryhill, 1:17CV277, 2018 WL 2025666, at *4-6 (M.D.N.C. May 1, 2018) (holding that the ALJ complied with SSR 00-4p and Pearson by eliciting an explanation from the expert that he "relied on his own professional experience" to render his opinion that the plaintiff remained capable of performing the overhead reaching requirements of the identified jobs despite an apparent conflict with the DOT); see also Wanda J. v. Saul, No. 4:19CV43, 2021 WL 2178562, at *10 (W.D. Va. May 28, 2021); Sanford v. Saul, No. 5:18-CV2886, 2020 WL 633743, at *14 (D.S.C. Feb. 11, 2020); compare Crouse v. Saul, No. 1:18CV269, 2019 WL 4015553, at *4 (M.D.N.C. Aug. 26, 2019) (remanding where "the VE did not identify the specific conflict in question"). Here, the ALJ in this case (1) recognized the specific conflict between the DOT and the Vocational Expert's testimony in light of the limitation in the RFC to only occasional overhead reaching, further noting the relevant issue that "the DOT doesn't separate overhead reaching from other directions", (2) specifically questioned the Vocational Expert regarding this conflict, asking the Vocational Expert how he could determine that the individual "could perform the office helper as actually [and] generally performed … and the driver as actually performed with only occasional overheard reaching", (3) received an explanation from the Vocational Expert explaining the conflict, specifically that the Vocational Expert reached the conclusion based on his "education, training and experience in job placement and job

10

evaluation – job analysis", and (4) determined that the explanation was both reasonable and provided a reasonable basis for relying on the Vocational Expert's testimony given the Vocational Expert's status as a certified rehabilitation counselor with extensive experience set out in his C.V. (Tr. at 31.) The Court finds that the ALJ in this case clearly provided the explanation absent in Pearson. Accordingly, the apparent conflict fails to merit remand.

In addition, the Court notes that the ALJ found that Plaintiff could return to her position as Office Helper as *actually* performed and as Driver as *actually* performed, thus involving consideration of not only the DOT descriptions but also the evidence of how Plaintiff performed those positions. At the hearing, the Vocational Expert and the ALJ considered Plaintiff's testimony regarding these positions. For example, as to the Office Helper,[7] Plaintiff testified that the position involved "looking at a computer all day long, looking, making sure where the trucks w[ere] at, keeping up with the mileage that the trucks went and keeping up with the diesel that the truck uses. Like I had to rewind the cameras to get – the next time a truck come up, I had to match that truck to that receipt. Then I had to go and get the money out of the box …. You had to match that truck with that receipt and then you had to add up the mileage to the gas that each truck, that each driver of that truck used for that day. And it's … guessing. And the next year we had to – I had to turn in for the tax. . . . [S]ometimes I had to go to the parts place or sometimes I had to go and take –

---

[7] Plaintiff's Work History Report described this position as follows:
> She worked at a trucking company where she worked as a secretary. Her job was to keep track of how much fuel the truck driver used from the filling station. She stated that when a driver filled up with gas, they filled out a ticket in which they wrote their name, date and how many gallons they used. [Plaintiff] stated that she would get the ticket and her job was to keep up with each driver and note the usage. She stated that she kept a spreadsheet in a notebook and would notate the usage. Machines, tools, equipment: Pen, notebook, phone.

(Tr. at 256, 260.)

pick up, get employees or take his employees to a job site. . . . I didn't lift nothing." (Tr. at 57, 61.) Plaintiff further explained that "I was sitting at the computer all day. . . You had to watch the trucks on the computer. . . . I was keeping up with the trucks – where they w[ere] at on the computer. Each truck had a tracker on it that we got to keep up with. And if they w[ere] somewhere else they're not supposed to be, I was supposed to report to my brother." (Tr. at 69.) Similarly, as to the Driver position, Plaintiff drove a van for a Railroad Company, and Plaintiff reported that she "drove engineers to their trains or other train stations to pick up their trains", that the position did not involve any lifting or carrying, and that she just went to wait to pick them up at the back door, which opened automatically with the push of a button. (Tr. at 54, 56.)

> As noted in SSR 00-4p,
>
> The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT.

Here, the Vocational Expert specifically considered not only the DOT but also the specific descriptions of Plaintiff's past work, and concluded based on his education, training, and experience that Plaintiff could return to that work as she actually performed it even with a limitation to only occasional overhead reaching. The Vocational Expert and the ALJ specifically addressed the limitation in overhead reaching, and the Vocational Expert's testimony provides substantial evidence to support the ALJ's determination.

The same holds true for the second apparent conflict identified by Plaintiff. In particular, Plaintiff argues that the ALJ failed to resolve an apparent conflict between the RFC

limitation to four hours of standing and/or walking per eight-hour workday and "the six hours required by the jobs identified at step four." (Pl.'s Br. at 7.) As a preliminary matter, Plaintiff asserts, citing SSR 83-10, that both "medium and light work require standing and/or walking for approximately 6 hours of an 8-hour workday." (Pl.'s Br. at 7.) In fact, only a full range of medium work includes this requirement. See SSR 83-10: <u>Titles II and XVI: Determining Capability to Do Other Work – The Medical-Vocational Rules of Appendix 2</u>, 1983 WL 31251, *6 (Jan. 1, 1983) ("A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds."). In comparison, a job is considered light work "when it requires a good deal of walking or standing" or "when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls." <u>Id.</u> Similarly, the DOT notes that the nature of the demands for light work, including the amount of walking, may vary widely:

> Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling or arm or leg controls, and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

DOT 239.567-010, 1991 WL 672232; see also <u>Jackson v. Berryhill</u>, No. 1:16CV1411, 2017 WL 4773314 (M.D.N.C. Oct. 20, 2017).

Notably, both jobs at issue in the present case involve light work. Although the job of Driver is generally classified as medium work, the ALJ found, based on the Vocational Expert's testimony, that Plaintiff performed her past relevant work as a Driver at the light exertional level. (Tr. at 72.) The Vocational Expert further testified that an individual with

13

Case 1:23-cv-01020-JEP    Document 13    Filed 03/11/25    Page 13 of 16

Plaintiff's RFC would continue to remain capable of that work as actually performed. (Tr. at 73.) The DOT classifies the additional job of Office Helper as light work, and the Vocational Expert testified that an individual with Plaintiff's RFC was capable of that work as both actually and generally performed. (Tr. at 73.) Therefore, the ALJ's inclusion of a restriction to 4 hours of standing and/or walking per workday does not <u>directly</u> conflict with the requirements for either job identified by the ALJ.

Moreover, to the extent that an <u>apparent</u> conflict exists between the DOT and the ALJ's step four findings, Plaintiff's attorney raised this issue when questioning the Vocational Expert:

> Q  If there were a hypothetical individual who could only stand for 4 hours in an 8-hour day, how would that impact the jobs we've talked about today?
>
> A  For the driving job, that would be okay. Office helper—so for the office helper and the driver that would be okay.

(Tr. at 74.) The Vocational Expert added that the addition of a 4-hour standing restriction would eliminate Plaintiff's two other past relevant jobs, that of fabric inspector and hand packer. (Tr. at 74.) Notably, when Plaintiff's attorney concluded her questioning of the Vocational Expert, the ALJ returned to the issue of standing restrictions:

> Q  Mr. DeMark, I just have a follow-up of the office helper, as far as the 4 hours out of the eight-hour day. Was that as generally performed, that that job would still be available or only as actually performed?
>
> A  Both, Your Honor. In my opinion, that would be a job that allows for a sit/stand option.
>
> Q  All right. And that, again, is based on what you said earlier, as far as your experience and training and the job analysis. Has—other than what we've already discussed, has your testimony been consistent with the DOT?

> A   Your Honor, just the DOT does not discuss absenteeism, and that is based on my education, training, experience in job placement and job analysis.
>
> ALJ:   All right. Thank you, sir.

(Tr. at 75.)

As illustrated above, both the ALJ and Plaintiff's attorney questioned the Vocational Expert about the specific limitation at issue. The Vocational Expert explained that, based on his education, experience, and training, a restriction to four hours of standing per workday would eliminate two of Plaintiff's past jobs, but would allow her to continue performing the jobs of Driver and Office Helper. (Tr. at 74.) In the case of Office Helper, the Vocational Expert further explained that the position of Office Helper allowed for a sit/stand option. (Tr. at 75.) This explanation, along with the ALJ's acceptance of it, clearly satisfies the ALJ's obligation under SSR 00-4p and the relevant case law regarding apparent conflicts.

Further, as noted above, the ALJ found that Plaintiff could return to her position as Office Helper as *actually* performed, involving consideration of not only the DOT descriptions but also the evidence of how Plaintiff performed those positions. Plaintiff described the Office Helper position as "sitting at the computer all day" (Tr. at 69), and her work history report noted that this position involved only 1 hour walking and 1 hour standing each day (Tr. at 256). The Vocational Expert considered this evidence and concluded that Plaintiff could return to that work as she actually performed it even with a limitation to only 4 hours per day of standing and/or walking, and that testimony, and the evidence in the record, provides substantial evidence to support the ALJ's determination.

Although the Vocational Expert did not provide the same level of specificity regarding the position of Driver, this job, by its very nature and as described by Plaintiff, is one which

15

involves "sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls." SSR 83-10, 1983 WL 31251, *5 (Jan. 1, 1983). Most notably, Plaintiff did not perform certain other duties typically associated with the Driver position as described in the DOT, such as loading and unloading luggage. (Tr. at 72.) Rather, Plaintiff described her job as simply driving "engineers to their trains or other train stations to pick up their trains." (Tr. at 54, 56.) The Vocational Expert concluded that Plaintiff could not do the job of Driver as generally performed, given that the DOT classifies the position of Driver as medium work. Instead, the Vocational Expert concluded that Plaintiff actually performed the job at the light exertional level and that she could only continue to perform the job as actually performed. (Tr. at 72, 74.) The Vocational Expert based this finding on Plaintiff's own testimony regarding her work. Moreover, the Vocational Expert, when asked by Plaintiff's counsel, then specifically considered whether the Driver position, as described by Plaintiff, could be performed by an individual restricted in her ability to stand to 4 hours per day, as set out in the RFC, and the Vocational Expert responded that, based on his education, training, and experience, she could. (Tr. at 74, 76.) Neither Pearson nor SSR 00-4p requires more.

IT IS THEREFORE ORDERED that the Commissioner's decision finding no disability is AFFIRMED, that Plaintiff's Dispositive Brief [Doc. #7] is DENIED, that Defendant's Dispositive Brief [Doc. #10] is GRANTED, and that this action is DISMISSED.

This, the 11th day of March, 2025.

Joi Elizabeth Peake
United States Magistrate Judge

16

Case 1:23-cv-01020-JEP     Document 13     Filed 03/11/25     Page 16 of 16